J-S23014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appellant | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JERMAINE VEASY | : | No. 1100 EDA 2019 |
| | : | |

Appeal from the Judgment of Sentence Entered March 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000503-2018

BEFORE:  NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

CONCURRING STATEMENT BY McCAFFERY, J.:      Filed: December 30, 2020

Although I agree with the learned majority that reversal is mandated under these circumstances, I write separately to express my concern that we refrain from requiring police officers to think, and speak, like lawyers.  In my view, **Miranda v. Arizona**, 384 U.S. 436 (1966), sets the standard in this area: yes, it imposes a burden on police officers to communicate the law, but **Miranda** warnings are clear, concise, and easy to communicate.[1]  The further we stray from that, toward more complex, dry, and lengthy summaries, the more likely we are to set police officers up to fail.  Such requirements, and

---

[1] One measure of how successful the **Miranda** requirement has been is its near ubiquity in police procedural shows on television.  At this point, without a **Miranda** warning at arrest, a show's depiction will not seem realistic to the average viewer.  That kind of cultural penetration speaks to the elegant simplicity of the **Miranda** requirement.

such failures, may cause or heighten tensions between officers and the communities they serve, and thus frustrate the original purpose of these types of warning mandates.

The error here, though meaningful enough to justify reversal, would seem trivial to many people: "could" versus "will." It was delivered in the field, in a police car, at around 2:00 a.m. The arresting officers had been following Appellant when he drove at a high rate of speed with no headlights, encountered oncoming traffic, and went around a median, driving the wrong way on a one-way lane. N.T. Suppression, 9/20/18, at 12. The officer's observations, combined with the blood test results, indicate that Appellant was highly inebriated. *Id.* at 12-16. Thus, although Appellant was cooperative throughout the interaction, it was somewhat stressful. In such circumstances, in the dark, early hours of the morning, officers may be hard-pressed to get the mandated blood test warning language exactly right, and thus I believe our courts should do everything we can to apply the totalities test in a pragmatic manner, and avoid holding police officers to a standard more appropriate for lawyers.

The scenario presently before the Court should be a rare one, as the old DL-26 forms must surely have been replaced almost everywhere at this point. Though I concur with the Majority, my gut tells me that we are nearing the limits of what we can reasonably expect of peace officers, and it is my hope

that we will be mindful of the stresses and limitations of their job and go no further.